UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ARTURO JOSE C.P.,

           Petitioner,

    v.

WARDEN, CALIFORNIA CITY
IMMIGRATION PROCESSING
CENTER,

           Respondent.

No. 1:26-cv-03183-TLN-AC

A # 232-637-494

**RELEASE ORDER**

This matter is before the Court on Petitioner Arturo Jose C.P.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondent filed a response. (ECF No. 6.) Petitioner replied. (ECF Nos. 10, 11.) For the reasons set forth below, Petitioner's Habeas Petition is GRANTED. (ECF No. 1.)

///

///

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is an asylum seeker who entered the United States lawfully on or about June 25, 2022, with a tourist visa. (ECF No. 1 at 2; ECF No. 6-1 at 2–3.) He subsequently applied for asylum and temporary protected status ("TPS"). (ECF No. 1 at 6–8.) He was granted TPS and his asylum application remains pending. (ECF No. 10 at 3.) Following his entry into the United States, Petitioner was employed and lived with his spouse and two children, who depend on him emotionally and financially. (*Id.* at 2; ECF No. 1 at 2, 4; ECF No. 6-1 at 3.) Petitioner maintains that he does not pose a danger to the community and is not a flight risk. (ECF No. 1 at 2.) He has no criminal convictions. (ECF No. 11-1 at 2.) Petitioner also submits letters from his spouse, family members, and friends attesting to his good moral character. (ECF No. 1 at 4, 9–12.)

On March 12, 2026, Petitioner was arrested and detained by Border Patrol in North Miami Beach, Florida. (ECF No. 6-1 at 2.) According to the government's records, a Border Patrol agent observed Petitioner's vehicle, ran a check on the state's vehicle registration database which revealed Petitioner's name, and then ran an immigration check on his name. (*Id.*) Upon discovering Petitioner's immigration status, the agent pulled over the vehicle and arrested Petitioner. (*Id.*) Petitioner was taken to the Dania Beach Bord Patrol Station for processing. (*Id.*) That same day, he was issued a Notice to Appear and placed in removal proceedings. (ECF No. 6-2.) While detained in Florida, Petitioner requested a custody redetermination hearing. (ECF No. 6-3.) An immigration judge ("IJ") denied Petitioner's request for release by reason of flight risk. (*Id.*) Petitioner was subsequently transferred to the California City Immigration Processing Center where he remains detained. (ECF No. 1 at 1.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on April 27, 2026. (*Id.*) Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*Id.* at 2–3.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in

2

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 2.) In opposition, Respondent argues that Petitioner is lawfully detained under 8 U.S.C. § 1226(a) because he was provided a post-deprivation bond hearing and that his habeas petition should be denied for failure to exhaust administrative remedies.[2] (ECF No. 6 at 4–6.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the

---

[2]    After considering the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), the Court finds prudential exhaustion is not required here. First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's due process claim. Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez*, 872 F.3d at 989 (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)). Finally, it is unlikely the agency will correct its own mistake upon further review.

procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A.    Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. Petitioner lawfully entered the United States approximately four years ago, and in that time worked, supported his spouse and children, developed ties to his community, obtained TPS, and pursued his asylum claim. Even if his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693. Respondent does not challenge Petitioner's liberty interest. (*See generally* ECF No. 6.) Accordingly, Petitioner maintains an interest in his continued liberty protected by the Due Process Clause.

B.    Process Required

To determine what process is necessary to ensure any deprivation of Petitioner's liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, these factors support Petitioner's constitutional right to notice and a pre-deprivation hearing.

4

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by the government's actions detaining him.  The amount of time Petitioner spent at liberty underscores the gravity of its loss.  *See Doe v. Becerra* (*Doe I*), 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025).  Accordingly, this factor weighs in favor of finding Petitioner has a significant private interest that has been affected by his detention.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is considerable.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest for his detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," there is nothing in the record indicating that at Petitioner's post-deprivation bond hearing, the government demonstrated by clear and convincing evidence that Petitioner's detention is necessary to achieve those purposes or that those purposes outweigh Petitioner's constitutionally protected interest in remaining free from detention.[3]  *Hernandez*, 872 F.3d at 990.

Here, the record shows the IJ rejected Petitioner's request for release solely based on flight risk.  (ECF No. 6-3.)  The decision to continue Petitioner's detention on that finding alone does not pass constitutional muster.  For Petitioner's detention to be justified by reason of flight risk, there must be some consideration of whether any bond amount or alternative release conditions could ensure Petitioner's appearance at future immigration proceedings.  *See Hernandez*, 872 F.3d at 990-91; *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1088 (N.D. Cal. 2024) ("If alternatives can mitigate risks and protect the government's interests, then detention (instead of one of those alternatives) is excessive in relation to those interests and unconstitutionally punitive.").  Petitioner has TPS, a pending asylum application, strong incentives to appear in proceedings, and significant ties to the United States, including his spouse and two children who

---

[3]    Courts in this Circuit have routinely found the appropriate standard for post-deprivation bond hearings is for the government to bear the burden of proving by clear and convincing evidence that the noncitizen's detention is necessary to prevent danger to the community or flight. *See, e.g., Pinchi*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035-JLT-HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025); *Caglar v. Wamsley*, No. 2:26-cv-00787-TMC, 2026 WL 1123515 (W.D. Wash. Apr. 24, 2026).

5

live in the United States.  Without a determination as to whether any bond amount or alternative release conditions could ensure Petitioner's appearance at future immigration proceedings, based on the record before the Court, Petitioner has not been provided with adequate due process to ensure the deprivation of his liberty is justified.  Thus, the Court finds the risk that Petitioner has been erroneously deprived of his liberty is high.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without notice and a pre-deprivation hearing is low.  The effort and cost required to provide Petitioner procedural safeguards are minimal.  *See Doe I*, 787 F. Supp. 3d at 1094.  Notice and custody determination hearings are routine processes for Respondent.  Any burden associated with their provision does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.  Respondent sets forth no legitimate interest in detaining Petitioner without these processes.

Upon consideration of the *Mathews* factors, the Court finds due process required that Petitioner receive notice and a hearing before a neutral decisionmaker prior to detention to determine whether his detention was justified.  He received neither.  Petitioner's detention therefore violates the Fifth Amendment Due Process Clause.

**IV.    CONCLUSION**

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.)  IT IS HEREBY ORDERED:

1.    Respondent must IMMEDIATELY RELEASE Petitioner Arturo Jose C.P. (A # 232-637-494) from custody.  At the time of release, Respondent must return all of Petitioner's documents and possessions.  **Respondent must file a notice certifying compliance with this provision of the Court's Order within two (2) court days from the date of this Order.**

2.    Respondent is ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that the

government's interest in protecting the public and/or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention. *See Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990. At any such hearing, Petitioner shall be allowed to have counsel present.

3. **The Clerk of Court is directed to serve California City Immigration Processing Center with a copy of this Order.**

4. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: June 4, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE